UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| | : | CIVIL ACTION NO. |
| | : | 3:12-CV-00396 (VLB) |
| In re Trilegiant Corporation, Inc. | : | |
| | : | |
| | : | |
| | : | March 28, 2014 |

MEMORANDUM OF DECISION GRANTING
BANK DEFENDANTS' MOTION TO DISMISS [DKT. 180]

I.      Introduction

The Plaintiffs, Debra Miller ("Miller"), Brittany DiCarolis ("DiCarolis"), Hope Kelm ("Kelm"), Jennie H. Pham ("Pham"), Brett Reilly ("Reilly"), Juan M. Restrepo ("Restrepo"), Brian Schnabel, Edward Schnabel, Lucy Schnabel, Annette Sumlin ("Sumlin"), Regina Warfel ("Warfel"), and Debbie Williams ("Williams"), bring this proposed class action against three categories of Defendants, the Trilegiant Defendants, which includes Affinion Group, LLC ("Affinion"), Trilegiant Corporation, Inc. ("Trilegiant"), and Apollo Global Management, LLC ("Apollo"), the Credit Card Defendants, which includes Bank of America, N.A. ("Bank of America"), Capital One Financial Corporation ("Capital One"), Chase Bank USA, N.A. ("Chase"), Citibank, N.A. ("Citibank"), Citigroup, Inc. ("Citigroup"), Chase Paymentech Solutions, LLC ("Paymentech"), and Wells Fargo Bank, N.A. ("Wells Fargo"), and the E-Merchant Defendants, which includes 1-800-Flowers.com, Inc. ("1-800 Flowers"), Beckett Media LLC ("Beckett"), Buy.com, Inc. ("Buy.com"), Classmates International, Inc. ("Classmates"), Days Inns WorldWide, Inc. ("Days

1

Inns"), Wyndham WorldWide Corporation ("Wyndham"), FTD Group, Inc. ("FTD"), Hotwire, Inc. ("Hotwire"), IAC/InterActiveCorp ("IAC"), Shoebuy.com, Inc. ("Shoebuy"), PeopleFindersPro, Inc. ("PeopleFinder"), Priceline.com, Inc. "Priceline"), and United Online, Inc. ("United Online").

The Plaintiffs allege several causes of action against the Defendants, including violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) (RICO), against all Defendants; conspiring to violate RICO, 18 U.S.C. § 1962(d), against all Defendants; aiding and abetting RICO, 18 U.S.C. §§ 1961-1968, against the Credit Card Defendants; aiding and abetting commissions of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and bank fraud, 18 U.S.C. § 1344, against the Credit Card Defendants; violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* (ECPA), against Trilegiant, Affinion, and the E-Merchant Defendants; aiding and abetting ECPA violations under 18 U.S.C. §§ 2510, *et seq.,* against the Credit Card Defendants; violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* (CUTPA), against the Trilegiant Defendants and E-Merchant Defendants; aiding and abetting and conspiracy to violate CUTPA, Conn. Gen. Stat. § 42-110a, *et seq.,* against the Credit Card Defendants; violations of the California Business and Professional Code § 17602 (Automatic Renewal Statute), against the Trilegiant Defendants and E-Merchant Defendants; and claims of unjust enrichment against all Defendants.

Before the Court is the Banks' Motion to Dismiss, filed by Bank of America, Capital One, Chase, Paymentech, Citibank, Citigroup, and Wells Fargo [Dkt. 180;

Memorandum of Law in Support, Dkt. 181-1, hereinafter "MTD"].  The Credit Card Defendants move to dismiss the Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint") for failure to state a claim upon which relief can be granted.  [Dkt. 141, hereinafter "CAC at ¶"].  For the reasons stated below, the motion to dismiss is GRANTED.

## II.     Background

A full recitation of the background and facts is set forth in the Court's Memorandum of Decision Granting In Part and Denying In Part Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint or, in the Alternative, to Strike Portions of the Complaint [Dkt. 276, hereinafter "Court Order at Dkt. 276"].

## III.    Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to

relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am.*

*Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

IV.     Discussion

The Credit Card Defendants (the "Defendants") move to dismiss several of the Plaintiffs' claims for failure to state a claim upon which relief may be granted.

1.  RICO Claims

The Defendants move to dismiss the Plaintiffs' RICO claims on several grounds.  "*First*, Plaintiffs do not allege that the [Credit Card Defendants] 'directed the affairs' of an alleged RICO enterprise, as required by controlling precedent.  *Second*, Plaintiffs fail to allege facts sufficient to establish that the [Credit Card Defendants] committed predicate acts of racketeering.  *Third*, Plaintiffs fail to allege facts sufficient to establish that the [Credit Card Defendants] caused the Plaintiffs' alleged injury."  MTD p. 11.  For similar reasons, the Defendants argue that the Plaintiffs' RICO conspiracy claim must also fail.  *Id.*  These issues have already been addressed in the Courts Order at Dkt. 276.  In that Order, the Court dismissed the Plaintiffs' substantive RICO claims and their RICO conspiracy claims.  This issue, therefore, is moot as it was already dismissed.[1]  However, the Plaintiffs also allege an aiding and abetting

---

[1] **The Defendants also argue that the Plaintiffs have failed to allege sufficiently the Credit Card Defendants' intent in commit the RICO predicate acts and that the Defendants' acts caused the injuries.  Because the Plaintiffs have insufficiently alleged racketeering activity, they have also failed to allege that the Credit Card Defendants had the requisite intent to commit a racketeering conspiracy. Moreover, in response to the lack of causation issue, the Plaintiffs argue that they only need to prove the conspiracy or enterprise caused the injuries, not that each**

charge only against the Credit Card Defendants.  Since that claim has not yet been addressed, it is ripe for decision.

### 2.  Aiding and Abetting RICO and Wire, Mail, and Brank Fraud

The Defendants argue that Count III and IV of the Complaint must be dismissed because there is no independent cause of action for aiding and abetting RICO violations or for aiding and abetting the commission of mail, wire, or bank fraud.  MTD p. 31-32.  In the alternative, they argue that even if there is such a cause of action, the Plaintiffs have not sufficiently alleged the elements necessary to prove an aiding and abetting claim.  [Dkt. 245, Reply Memorandum of Law in Support of the Bank Defendants' Motion to Dismiss, p. 12-14, hereinafter "Reply"].  In response, the Plaintiffs seem to argue that they are not claiming independent causes of action based on wire, mail or bank fraud, but are arguing that the Credit Card Defendants are liable for the substantive RICO violations and conspiracy to violate the RICO statute because they aided and abetted the RICO predicate acts.  [Dkt. 219, Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss, p. 12-14, hereinafter "Opp."].  While aiding and abetting the commission of mail, wire, or bank fraud does constitute a predicate act under RICO, the Plaintiffs have insufficiently alleged how the Credit Card Defendants aided and abetted any such acts.

---

individual Defendant did.  [Dkt. 219, Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss, p. 67-71, hereinafter "Opp."].  Since the Court found that there was no RICO enterprise or conspiracy, this argument is moot.  However, if there were such an enterprise or conspiracy, the Plaintiffs have sufficiently alleged injury resulting therefrom.

### a.  Aiding and Abetting RICO

The relevant RICO provision that provides for civil liability states in its entirety that:

> [a]ny person injured in his business or property by reason of a violation of section 1986 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase of sale of securities to establish a violation of section 1962.  The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c).  As is apparent from the text, the statute does not explicitly or implicitly create a cause of action for aiding and abetting liability.  In a separate provision of the Code, Congress extended criminal liability to "[w]hoever commits an offense against the United States or aids, abets, counsel, commands, induces or procures its commission . . . ."  18 U.S.C. § 2(a).  Notwithstanding that criminal statute, the Supreme Court later held that because there was no similar general civil aiding and abetting statute, there is no presumption that federal statutes create a civil cause of action for aiding and abetting unless Congress has affirmatively demonstrated its intent to create such a cause of action.  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 182-83 (1994) (precluding aiding and abetting liability under the securities laws because the statutory language does not provide for such liability).  Even though the Supreme Court was not specifically considering the RICO statute in *Cent. Bank of*

7

*Denver*, several courts in this circuit interpreting the decision have held that Congress did not create a cause of action for aiding and abetting a RICO violation.

For example, in *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, the court found that because 18 U.S.C. § 2 only created criminal liability for aiders and abettors and the RICO statute provides no indication that Congress intended to create a cause of action for accessorial liability, the plaintiffs could not maintain a claim for "aiding and abetting a RICO violation because there is no such federal tort." *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 449, 477 (S.D.N.Y. 1996). In arriving at that conclusion, the court stated it did not need "to go beyond the text of the statute" because the text clearly did not create an aiding and abetting cause of action. *Id.* at 476. *Accord Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 843-44 (3d Cir. 2000); *Ling v. Deutsche Bank, AG*, No. 04 Civ. 4566, 2005 WL 1244689, at *3 (S.D.N.Y. May 26, 2005); *Lippe v. Bairnco Corp.*, 218 B.R. 294, 303-04 (S.D.N.Y. 1998); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 CIV 6876 LMM, 2000 WL 1694322, at *4 (S.D.N.Y. Nov. 13, 2000); *see also* Jed S. Rakoff, *Aiding and Abetting Under Civil RICO*, N.Y.L.J., May 12, 1994, at 3 ("[T]here is no suggestion that § 2, enacted in 1909, was intended to authorize civil liability for aiding and abetting in any situation in which Congress thereafter combined civil and criminal penalties in one statute, whether in RICO (enacted in 1970), the Securities Exchange Act (enacted in 1934), or elsewhere."). There is also no language elsewhere in the

statute that would clearly militate against applying the default presumption that no aiding and abetting liability exists.

As the Supreme Court noted thirty years ago in *Cent. Bank of Denver, N.A.*, the text of 18 U.S.C. § 1962 does not create a civil cause of action for aiding and abetting RICO claims, and "Congress is presumed to be aware of an administrative or judicial interpretation of a statute." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978).  Since Congress has not amended the statute to clearly reflect the creation of aiding and abetting liability in the wake of the decisions holding that no such liability exists, there is no legal footing upon which this Court could declare a cause of action for such liability.  Accordingly, to the extent that the Plaintiffs are alleging causes of action against the Credit Card Defendants directly for aiding and abetting RICO violations under 18 U.S.C. § 1962, the motion to dismiss is GRANTED.

### b.  Sufficient Allegations for Aiding and Abetting Claims

Assuming, *arguendo*, that the RICO statute provided a private cause of action for aiding and abetting liability, the Plaintiffs' claims must be dismissed because they have not sufficiently alleged how the Credit Card Defendants aided and abetted the RICO violation.

To plead a claim of aiding and abetting, the Plaintiffs are required to show "(1) a primary violation; (2) knowledge of that violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary RICO violation."  *Charamac Props., Inc. v. Pike*, No.

86civ.7919(KMW), 1993 WL 427137, at *4 (S.D.N.Y. 1993); *see also United States v. Cruz*, 363 F.3d 187, 197-98 (2d Cir. 2004) (a defendant may only be convicted of aiding and abetting if the underlying crime was committed).  The "Plaintiff must also assert facts showing how the defendant participated as an aider and abettor in the requisite predicate acts."  *Id.*

The Plaintiffs' aiding and abetting claim fails for several reasons.  First, the Plaintiffs have failed to allege sufficiently a primary violation of RICO.  *See* Court Order at Dkt. 276.  Second, the Plaintiffs do not allege sufficient facts to show that the Credit Card Defendants actually knew about or had constructive knowledge of the fraudulent scheme.  *Id.*  Finally, the Plaintiffs have not alleged that the Credit Card Defendants substantially assisted the primary violation or any of the predicate acts.  The Plaintiffs argue that the Credit Card Defendants substantially assisted in the fraud by processing charges that they knew to be fraudulent, but only allege insufficient conclusory allegations explaining why they assumed the Defendants knew the charges were fraudulent.  CAC at ¶ 12.  Furthermore, the Plaintiffs also allege that the Credit Card Defendants sent each Plaintiff monthly bank statements that identified the Trilegiant membership fees.  CAC at ¶ 160(h). These statements had the opposite effect of substantially assisting the alleged scheme; they repeatedly revealed the scheme to the Plaintiffs.  Therefore, the Plaintiffs have not alleged any of the elements necessary to prove aiding and abetting liability.

### c.  Aiding and Abetting Mail, Wire, and Bank Fraud as Independent Causes of Action

Even though the Plaintiffs initially asserted a claim against the Credit Card Defendants for aiding and abetting commission of mail, wire, and bank fraud, they later conceded that they "do not assert direct claims for mail and wire fraud against the Credit Card Defendants."  CAC at ¶ 186; Opp. p. 60, n.39.  The Plaintiffs have therefore abandoned this claim.  *Massaro v. Allingtown Fire Dist.*, No. 3:03-cv-00136(EBB), 2006 WL 1668008, at *5 (D. Conn. June 16, 2006) ("When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned.").

 Even so, the Defendants correctly argue that there is no independent civil cause of action for committing mail, wire, and bank fraud.  *Claude v. Am. Express Centurion Bank*, No. 3:10cv742(JBA), 2011 WL 2619065, at *1 (D. Conn. July 1, 2011) ("While violations of [the bank fraud and wire fraud statutes] can be predicate 'racketeering activities' for a RICO action, neither statute explicitly or impliedly gives rise to a standalone private cause of action."); *Pappas v. Arfaras*, , No. B-90-326(WWE), 1991 WL 218072, at *2 (D. Conn. Aug. 28, 1991) (neither the mail fraud statute nor the wire fraud statute "offers a basis for a private cause of action").  Furthermore, the Plaintiffs do not have standing to raise a bank fraud claim because none of them are financial institutions.  *See* Court Order at Dkt. 276.  Therefore, any independent claim against the Credit Card Defendants for mail, wire, or bank fraud must be and are hereby DISMISSED.

### d. <u>Aiding and Abetting Mail and Wire Fraud as Predicate Acts</u>

Even though there is no civil liability for aiding and abetting a RICO violation generally, aiding and abetting the commission of predicate acts under 18 U.S.C. § 1961(1) can be considered racketeering activity for purposes of proving a RICO violation.  As the Court has already discussed, 18 U.S.C. § 1961(1) provides an exhaustive list of predicate acts that constitute racketeering activity. *See* Court Order at Dkt. 276.  As related to the alleged predicate acts in this case, 18 U.S.C. § 1961(1) includes "any act that is indictable" under the mail fraud, wire fraud, and bank fraud statutes.  18 U.S.C. § 1961(1)(B).  Indictable offenses for mail, wire, and bank fraud include aiding and abetting the commission of those acts.  18 U.S.C. §§ 2, 1341, 1343; s*ee United States v. Litwok*, 678 F.3d 208, 213-215 (2d Cir. 2012); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*., No. 93 CIV 6876 LMM, 2000 WL 1694322, at *4-6 (S.D.N.Y. Nov. 13, 2000) (finding aiding and abetting mail and wire fraud constitute predicate acts under 18 U.S.C. § 1961(1)).  Therefore, aiding and abetting mail or wire fraud is by definition a racketeering activity under RICO.

Even so, the Plaintiffs have failed to allege sufficiently that the Defendants actually committed the underlying mail and wire fraud predicate acts.  *See* Court Order at Dkt. 276.  Since an aiding and abetting claim can only be maintained when the underlying acts alleged to have been aided and abetted were committed, the Plaintiffs cannot sufficiently allege that the Credit Card Defendants aided and abetted mail, wire or bank fraud.  *United States v. Dist. Council of New York City*, No. 90CIV.5722(CSH), 2007 WL 2697135, at *12 (S.D.N.Y.

Sept. 17, 2007) (a conviction of aiding and abetting requires the commission of the underlying offense).

The Defendants' motion to dismiss the Plaintiffs' claims for aiding and abetting mail, wire, and bank fraud is GRANTED.

### 3.  CUTPA Claims

The Defendants also move to dismiss the Plaintiffs' CUTPA claims on four grounds: (1) CUTPA does not provide a cause of action for aiding and abetting; (2) each of the Plaintiffs' credit card agreements requires the application of another state's laws, thereby barring a CUTPA cause of action; (3) the Plaintiffs have insufficiently pled that the Defendants knowingly and substantially assisted the principle violation; and (4) the claim lacks the necessary nexus to Connecticut.  MTD p. 34-37.  The Plaintiffs respond by arguing that (1) CUTPA does permit a cause of action for aiding and abetting; (2) the Court should not consider the Plaintiffs' credit card agreements on a motion to dismiss, but even so, they are not broad enough to preclude tort claims; (3) they have sufficiently pled that the Defendants knew of and aided the CUTPA violations; and (4) there is a sufficient nexus because the Trilegiant Defendants, which the Credit Card Defendants were aiding, provided that requisite nexus.  Opp. 117-123.

### a.  <u>Aiding and Abetting Liability under CUTPA</u>

The Defendants first argue that the Plaintiffs' "claims for aiding and abetting under CUTPA fail because the statute does not expressly provide for

aiding and abetting liability."  MTD p. 34.  This Court finds that CUTPA does provide a cause of action for aiding and abetting liability.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b.  As is always the case, when interpreting a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature."  *Sears, Roebuck & Co. v. Bd. of Tax Review*, 241 Conn. 749, 758-59 (1997).  To do so, the Court "look[s] first to the text of the statute.  If that language is plain and its meaning sufficiently clear, [it] need look no further.  Only if the text of the statute is not unambiguous [does the Court] turn for guidance to legislative history and the purposes of the statute."  *Novak v. Kasaks*, 216 F.3d 300, 310 (2d Cir. 2000); *see also* Conn. Gen. Stat. § 1-2z ("The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes.  If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.").

CUTPA's text does not explicitly address whether aiding and abetting unfair or deceptive practices constitutes a basis for liability, but it does clarify that "this chapter [is] remedial and [should be] so construed."  Conn. Gen. Stat. § 42-110b(d).  When the text does not provide a definitive answer to the issue in question, we often turn to the statute's legislative history, scholarly analysis, and common law jurisprudence to guide our interpretation.  *See United States v.*

*Pettus*, 303 F.3d 480, 488 (2d Cir. 2002); *Conn. Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 110-112 (D. Conn. 2001).

As expected from a remedial consumer-protection statute, CUTPA's legislative history indicates that the Connecticut legislature intended that the statute be implemented broadly to stamp out the practice of fraudulent, deceptive, and unfair business conduct generally.  For example, one representative introducing the legislation stated that CUTPA "gives honest businessmen great protection in [fighting] deceptive or unscrupulous competitors . . . who by unfair methods of competition and deceptive advertising, etc. unlawfully divert trade away from law abiding businessmen."  16 H. R. Proc., Pt. 14, 1973 Sess., p. 7323.  When debating the bill another representative stated that "[h]opefully this is an umbrella kind of a measure that will . . . take care of all deceptive and fraudulant (sic) practices."  Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 692.  These representatives, therefore, did not view the bill as having implicit constraints that would frustrate the execution of its remedial purpose.

The Connecticut Supreme Court has also consistently interpreted CUTPA broadly, declaring that in its jurisprudence "we have interpreted the statute generously to implement its remedial purposes even without a specific statutory basis for our decision."  *Kim v. Magnotta*, 249 Conn. 94, 108 (1999); *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 492 (1995) ("CUTPA, by its own terms, applies to a broad spectrum of commercial activity.")

Even though no appellate court has specifically addressed whether aiding and abetting liability is actionable under CUTPA, the Connecticut Supreme Court has permitted CUTPA claims based on other accessorial conduct such as conspiracy. *Conn. Nat. Bank v. Voog*, 233 Conn. 352, 368 (1995) (defendants counter-claim was proper when it alleged that the plaintiff "conspired with and provided aid to" another party to fraudulently induce the defendant to make a valueless purchase). Moreover, several trial courts have permitted claims under CUTPA based on allegations of a party's aiding and abetting activity. *See State v. Liberty Mut. Holding Co., Inc.*, No. 09cv06402387, 2009 WL 943094, at *5 (Conn. Super. Ct. March 20, 2009) (holding that CUTPA liability can be based on accessorial conduct such as aiding and abetting, and adopting the reasoning and conclusions stated in *Fee v. Benefit Plan Adm'rs, Inc.*, No. 406726, 2000 WL 1398898 (Conn. Sup. Ct. Sept. 7, 2000) (finding that aiding and abetting is actionable under CUTPA)); *State v. Tomasso*, 93 Conn. L. Rptr. 127, 2005 WL 1091763, at *6 (Conn. Super. Ct. 2005) (holding that allegations that defendants acted "in concert with and by giving substantial assistance or encouragement to" alleged possible accessory liability under CUTPA); *Rossman v. Morasco*, 38 Conn. L. Rptr. 897, 2005 WL 1023118, at *3-4 (Conn. Super. Ct. 2005) (holding that CUTPA allows for aiding and abetting liability). The Defendants argue, however, that we should ignore these precedents because the "the most recent case" that addressed the issue of whether CUTPA provided for aiding and abetting liability "reject[ed] it." MTD p. 17-18. However, the case that Defendants cite did nothing of the sort. *Hoffman v. Signature Const. Servs. Intern., LLC,* No. CV106007598S,

16

2011 WL 1168470 (Conn. Sup. Ct. Feb. 25, 2011).  That court merely highlighted that the "statutory text of CUTPA is silent on whether CUTPA allows for accessory liability and the appellate courts have not directly addressed the issue."  *Id.* at *1.  It then dismissed the claim on other grounds.  *Id.*  Therefore, the Defendants have not provided a single case in which the court dismissed an aiding and abetting claim under CUTPA because the statute did not create the cause of action.

CUTPA also provides that courts interpreting the statute "shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act . . ."  Conn. Gen. Stat. § 42-110b(b).  Historically, and indeed in 1973 when CUTPA was adopted, it was settled law that the Federal Trade Commission Act ("FTCA") provided a cause of action for aiding and abetting liability.  *See Gay Games, Inc. v. Fed. Trade Comm'n*, 204 F.2d 197 (10th Cir. 1953) (FTCA violations for a distributor of lottery-type devices for aiding and abetting); *Globe Cardboard Novelty Co., Inc. v. Fed. Trade Comm'n*, 192 F.2d 444, 446 (3d Cir. 1955) (aiding and abetting liability for assisting in the commission of unfair trade practices); *Deer v. Fed. Trade Comm'n*, 152 F.2d 65, 66 (2d Cir. 1945) (a party need not participate in the unfair conduct, it is sufficient if he aided and abetted such actions); *see also* The Antitrust Counselor, *The Federal Trade Commission Rules on Advertising*, 213 Antitrust Counselor NL 1 (Sept. 2012) ("the FTC historically assumed there to be an implied cause of action for aiding and abetting under § 5 of the FTC Act.")

As discussed in the Court Order at Dkt. 276, however, in 1994, the Supreme Court changed how courts view aiding and abetting liability by declaring that there is no general presumption of aider and abettor liability under federal securities laws. *Cent. Bank of Denver, N.A.*, 511 U.S. at 182-183. Since that decision, it appears that no circuit court has explicitly held whether aiding and abetting liability still exists under the FTCA. Moreover, in a subsequent decision, the Connecticut Supreme Court adopted the Supreme Court's reasoning in *Cent. Bank of Denver, N.A.*, and held that the Connecticut Securities Act did not impose liability on aiders and abettors or co-conspirators. *Conn. Nat. Bank v. Giacomi*, 233 Conn. 304, 339 (Conn. 1995). In a footnote, however, the court noted that "aiding and abetting a wrongdoer ought to be actionable in certain instances. *Cf.* Restatement (Second) of Torts § 876(b) (1977)." *Id.* at n.25. Interestingly, the provision of the restatement that the Connecticut Supreme Court cited provides liability for tortious conduct if one "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement . . . ." Restatement (Second) of Torts § 876(b) (1979). Unlike in *Conn. Nat. Bank*, which dealt with securities laws violations, CUTPA's cause of action relates to tortious conduct.

Finally, Connecticut courts often view interpretations of the Massachusetts unfair trade practices act as instructive because "the governing statutes" "are virtually identical to CUTPA." *Westledge Real Estate, Inc. v. Suffield Bank*, No. cv 90-0372765S, 1991 WL 27996, at *3 (Con. Super. Ct. Jan. 18, 1991). The relevant Massachusetts statute has been definitively interpreted to permit aiding and

18

abetting liability.  *See Prof'l Servs. Grp., Inc. v. Town of Rockland*, 515 F. Supp. 2d 179, 192 (D. Mass. 2007) ("Aiding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation."); *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 173 (Conn. App. 1999), *cert denied*, 429 Mass. 1105 (1999).

Given CUTPA's legislative history, its remedial purpose that the Connecticut Supreme Court has consistently interpreted broadly, the general consensus of the lower courts in this district, the status of federal law referenced in CUTPA at the time the statute was adopted, and the interpretations of the nearly identical Massachusetts statute, the Court holds that CUTPA provides an independent cause of action for aiding and abetting liability.  There is no indication either legislatively or jurisprudentially that CUTPA is restricted by the Supreme Court's analysis in *Cent. Bank of Denver, N.A.*  Accordingly, the Defendant's motion to dismiss the CUTPA claims on the basis that there is no liability under that statute for aiding and abetting is DENIED.

### b.  Credit Card Agreements

The Defendants next argue that each of the Plaintiffs' contracts with the relevant Credit Card Defendant has a choice of law provision which bars a CUTPA cause of action.  MTD p. 35.  The Defendants claim that the Court may take judicial notice of these agreements because they are integral to the Plaintiffs' claims.  *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (considering a cardholder agreement in motion to dismiss even though it was not

attached to the complaint or incorporated by reference because it was integral to the plaintiff's truth in lending claims).

Even if the Defendants' argument on judicial notice is correct, the language in the specific credit card agreements is not broad enough to bar the Plaintiffs' tort causes of action under CUTPA.  While it seems that neither the Connecticut Supreme Court nor the Second Circuit has addressed this issue, in *Country Club Assocs. v. Shaw's Supermarkets, Inc.*, the court held that general choice-of-law provisions in contracts must explicitly include tort claims to prevent a plaintiff from binging a cause of action under CUTPA.  *Country Club Assocs. v. Shaw's Supermarkets, Inc.*, 643 F. Supp. 2d 243, 252 (D. Conn. 2009); *cf. W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 146 Conn. App. 169 (2013).  The contract provision in *Country Club Assocs.* stated that "[t]he Lease shall be governed by and construed in accordance with the laws of the state in which the Center is located."  *Id.*  The court found that the provision was not broad enough to bar a CUTPA claim because it did not explicitly encompass tort claims, and "allowing a non-specific choice of law clause of this sort to preclude the operation of CUTPA would violate the public policy of the state."  *Id.* at 253.  Similarly here, the language in the credit card agreements only states "[t]he terms and enforcement of this agreement and your account shall be governed and interpreted in accordance with federal law and, to the extent state law applies, the law of Delaware, without regard to conflict-of-law principles."  MTD, declaration, p. 3.  The credit card agreements, therefore, are not specific enough to preclude the operation of CUTPA as they do not explicitly cover causes of action arising from

tortious conduct.  Since the Plaintiffs' credit card agreements are not broad enough to bar their CUTPA claims, the motion to dismiss the CUTPA claims on this basis is DENIED.

### c.  Sufficiency of Pleading

The Defendants argue that the Plaintiffs have not alleged sufficient facts to maintain their claim that the Credit Card Defendants aided and abetted Trilegiant and Affinion in violating CUTPA.  MTD p. 36.  Pursuant to the Court Order at Dkt. 276, only the CUTPA claims related to the refund mitigation strategy have been sufficiently pled to sustain the Defendants' motion to dismiss.  For that reason, the Court restricts its analysis to the relationship alleged between the Credit Card Defendants and that strategy.

To state an aiding and abetting claim, the Plaintiffs "must plead the specific details of the knowledge of each aider and abettor of the primary fraud, and specifically how the particular aider and abettor provided substantial assistance in the furtherance of the fraud."  *Short v. Conn. Cmty. Bank, N.A.*, No. 3:09-cv-1955, 2012 WL 1057302, at *12 (D. Conn. Mar. 28, 2012).  When describing the refund mitigation strategy in the Complaint, the Plaintiffs allege that "[m]any customers of the Defendant Credit Card Companies were unwittingly enrolled in privacy or credit guard type programs that Chase, Bank of America, Capital One and Wells Fargo contracted to allow Trilegiant to 'sell' to their card members."  CAC at ¶ 11(b).  The Plaintiffs then conclude that because some of the Credit Card Defendants were acting as merchants in that context, they also participated

in the refund mitigation strategy and selected the number of rebuttal steps, were aware of the call script, and were contractually required to conference in the Trilegiant call center to handle consumer complaints stemming from enrollment in the membership programs.  CAC at ¶ 11(b).  There are no other allegations directly tying the Credit Card Defendants to the development and implementation of the refund mitigation strategy, nor do any of the Plaintiffs allege to have purchased one of these credit guard type products.  These allegations alone, however, only relate to the Credit Card Defendants as E-Merchants, but the Plaintiffs did not bring a claim against them in this role.  The Complaint only alleges that the Credit Card Companies caused the Plaintiffs' injury by processing the unauthorized membership charges.  Furthermore, the Plaintiffs do not allege that the Defendants were actively involved in the refund mitigation strategy in their role as Credit Card Defendants.  Based on the Complaint, the Credit Card Defendants appear to do the opposite of "mitigation" because they were the entities responsible for clearly disclosing the membership enrollment to the Plaintiffs.  Also, when Paymentech, the exclusive processor of credit card charges for Affinion and Trilegiant, finally became aware of the extent of the customer complaints related to the membership programs, it confronted Trilegiant and required it to "propose a plan of action 'in order to reduce the number of reported 'potential fraud' transactions each month." CAC at ¶¶ 42, 110. These facts prove that the Credit Card Defendants hindered, not aided, the alleged fraudulent scheme.  Regardless, since the Plaintiffs' Complaint is conjectural and does not allege any facts showing that the Credit Card

Defendants knew about the refund mitigation strategy or took steps to substantially aid the creation or implementation of this strategy, they have not sufficiently alleged that the Credit Card Defendants have aided and abetted the alleged CUTPA violations.

The Plaintiffs have also claimed that the Credit Card Defendants are liable for conspiracy to violate CUTPA.  CAC at ¶ 214.  Even though no Defendant seems to directly attack this claim in the several motions to dismiss, the Plaintiffs' defense that it has sufficiently alleged a RICO conspiracy makes this claim ripe for determination.

"The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff."  *Halo Tech. Holdings, Inc. v. Cooper*, 3:07CV489(SRU), 2010 WL 1330770, at *9 (D. Conn. Mar. 31, 2010) (quoting *Macomber v. Travelers Prop. and Cas. Corp.* 277 Conn. 617, 635–36 (2006)). "[T]here is no independent claim of civil conspiracy.  Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself.  Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."  *Pierce v. Emigrant Mortg. Co.*, No. CIV.A. 304CV1767JCH, 2005 WL 2406007, at *7 (D. Conn. Sept. 29, 2005) (citations and internal quotation marks omitted).

In *Ramos*, the court found that plaintiffs' "general allegation[s]" of a civil conspiracy based on fraud were not sufficient to sustain a motion to dismiss. *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991). Specifically, that court said that "[a] proper allegation of conspiracy in a civil complaint must 'set forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff." *Id.* Reviewing this standard, it is clear that the Plaintiffs have not alleged sufficient facts to prove a civil conspiracy, even if they are only alleging a conspiracy based on unfair and deceptive practices.

The Plaintiffs have alleged that the Credit Card Defendants conspired with Trilegiant and Affinion in violating CUTPA.  CAC ¶ 215.  However, they do not state with any specificity how exactly or even when the Credit Card Defendants conspired to commit the unfair, deceptive, or fraudulent practices.  Just as in our analysis of the RICO conspiracy claim, the Plaintiffs have failed to show any one agreement by the parties to commit the illegal acts.  *See* Court Order at Dkt. 276. Without sufficient allegations of an agreement, there can be no conspiracy.  In response, the Plaintiffs request that we accept the Defendants' alleged knowledge of the scheme as constituting sufficient proof of an agreement.  Opp. 49-50.  However, the only allegations the Plaintiffs assert in support of the claim that the Credit Card Defendants knew of the scheme are the unquantified customer complaints against Trilegiant and the allegations that all of the Credit

24

Card Defendants have sophisticated anti-fraud software that should have detected the fraudulent charges.  CAC at ¶¶ 88-110.  The Plaintiffs fail to quantify or qualify the customer complaints and fail to identify the software, specify what it is designed to detect, how it is used, or allege any other facts which would raise this claim beyond the realm of conjecture.  These allegations alone are insufficient to show affirmatively that an agreement had been reached by the parties to violate the law.  Accordingly, the Plaintiffs have not sufficiently pled that the Credit Card Defendants conspired to violate or aided and abetted others' violations of CUTPA, and, therefore, these claims are DISMISSED.

### d.  Insufficient Nexus

The Defendants also argue that the Plaintiffs have not demonstrated a sufficient nexus to Connecticut to maintain their CUTPA claim.  MTD p. 37.  A court in this district has held that while it is not enough to have a tenuous nexus to Connecticut, if the alleged actions are undertaken by Connecticut corporations, the nexus is sufficient.  *See Country Club Assocs. LLC v. Shaw's Supermarkets, Inc.*, No. CIV.A 06-CV-0491(JCH), 2009 WL 1537952, at *29 (D. Conn. May 29, 2009), a*mended sub nom.*, 643 F. Supp. 2d 243 (D. Conn. 2009).  Here, the Plaintiffs have alleged that Trilegiant and other Connecticut-based companies engaged in an unfair and deceptive refund mitigation strategy.  Had the Plaintiffs adequately alleged that the Credit Card Defendants aided and abetted or conspired with that company to violate CUTPA, the Connecticut nexus would have been sufficient.  *See also Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F. Supp. 65, 71 (D. Conn. 1997) ("A CUTPA violation, however, need not

necessarily occur in Connecticut, but instead, the violation must be tied to a form of trade or commerce intimately associated with Connecticut.") (citations and internal quotation marks omitted)).

For the reasons stated above, the CUTPA claim is insufficiently pled and the Defendants' motion to dismiss the Plaintiffs' CUTPA claims is GRANTED.

### 4. ECPA Claims

The Defendants also argue that the Plaintiffs' ECPA claims against them should be dismissed because ECPA does not provide a cause of action for aiding and abetting liability.  MTD p. 33.  Section 2520(a) provides that "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."  18 U.S.C. § 2520(a).  The statutory text makes clear that the only person or entity liable under the statute is that which "engaged" in committing the communication's interception.  *See* C*ent. Bank of Denver, N.A.*, 511 U.S. at 182 (there is no general presumption of civil aider and abettor liability, Congress must demonstrate its intent to create such a cause of action in the statute).

While the Second Circuit has not directly addressed this issue, several other courts have found that ECPA does not create a cause of action for aider and abettor liability.  *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 2743, 186 L. Ed. 2d 208 (2013) ("Accordingly,

26

almost all courts to address the issue have held that § 2520 does not impose civil liability on aiders or abettors.") (citing *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000); *Council on Am.–Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 23-24 (D.D.C. 2012) (collecting cases); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004-07 (9th Cir. 2006); *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 776 (C.D. Ill. 2013)).  Since courts have long held that ECPA's text does not provide any indication that Congress intended to create a civil cause of action for accessorial liability, and Congress has not sought fit to amend the statute to clarify that it intended to create one, this Court finds that ECPA does not create a cause of action for aiding and abetting liability.[2]

Even if the statute provided for aiding and abetting liability, the Plaintiffs have not sufficiently stated how the Credit Card Defendants aided or abetted the interception of the Plaintiffs' confidential billing information.  In fact, the Plaintiffs have not even alleged that the Credit Card Companies knew of or were involved in the datapass at all.  Even if they knowingly processed the unauthorized charges, they only helped enhance the injury, not aid the actual interception of the Plaintiffs' billing information.  Therefore, the Plaintiffs have not sufficiently alleged that the Credit Card Defendants aided and abetted the ECPA violations.

The Defendants' motion to dismiss the Plaintiffs' ECPA claims is GRANTED.

---

[2] The statute prohibits an entity from intercepting, endeavoring to intercept or procuring another to intercept.  We do not intend our definition of aider and abettor to cover a "procurer" as used in the statute.  *See Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006).  A procurer is not an aider and abettor but one who violates the statute directly.

### 5.  Unjust Enrichment Claims

The Defendants also move to dismiss the Plaintiffs' unjust enrichment claims because the Plaintiffs fail to state how they were unjustly enriched, and, in the alternative, that the claims are barred because the Defendants and the Plaintiffs have a contractual relationship.  MTD. p. 38-39.  The Plaintiffs respond that they have adequately alleged the elements of an unjust enrichment claim and the contractual agreements do not bar equitable relief.  Opp. 132-34.

The Court addressed these claims in the Court Order at Dkt. 276, and granted the motion to dismiss the Plaintiffs' unjust enrichment claims as to the Credit Card Defendants.  Therefore, this issue is moot.

### 6.  Citigroup's Involvement

Finally, the Defendants argue that Citigroup was only named as a Defendant due to its status as a parent company of Citibank.  MTD. p. 39.  The Plaintiffs argue that they have sufficiently pled that Citigroup was a Credit Card Defendant by incorporating it into all other allegations related to the Credit Card Defendants.  Opp. p. 141.

The Complaint only makes the following allegations directly related to Citigroup: (1) "Defendant, Citibank, . . . is a wholly owned subsidiary of Citigroup"; and (2) "Defendant, Citigroup, is a Delaware corporation, headquartered in New York, New York.  Citigroup Inc. owns Citibank, N.A."  CAC at ¶¶ 42, 43.  There are no allegations that Citigroup was directly involved in the alleged scheme, no allegations that Citigroup even issues or processes credit

card transactions, and no allegations that Citigroup worked directly or indirectly with any other alleged member of the scheme.  For the reasons stated in the Memorandum of Decision Granting Defendant IAC/InterActiveCorp's Motion to Dismiss and Defendant Apollo Global Management, LLC's Motion to Dismiss [Dkt. 280], these allegations are insufficient to establish the Plaintiffs' constitutional standing and are equally patently insufficient as a matter of law to render a parent corporation liable for the acts of its subsidiary.

The motion to dismiss the Complaint against Citigroup is GRANTED.

V.      Conclusion

For the foregoing reasons, the Defendants' [Dkt. 180] Motion to Dismiss the Consolidated Amended Class Action Complaint is GRANTED.  All of the Credit Card Defendants are DISMISSED as Defendants since no claims against them remain extant.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 28, 2014