UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| In re Trilegiant Corporation, Inc. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:12-CV-00396 (VLB)<br><br><br><br>March 28, 2014 |

**MEMORANDUM OF DECISION GRANTING DEFENDANT
IAC/INTERACTIVECORP'S MOTION TO DISMISS [Dkt. 190] AND DEFENDANT
APOLLO GLOBAL MANAGEMENT, LLC'S MOTION TO DISMISS [Dkt. 187]**

I.      Introduction

The Plaintiffs, Debra Miller ("Miller"), Brittany DiCarolis ("DiCarolis"), Hope Kelm ("Kelm"), Jennie H. Pham ("Pham"), Brett Reilly ("Reilly"), Juan M. Restrepo ("Restrepo"), Brian Schnabel, Edward Schnabel, Lucy Schnabel, Annette Sumlin ("Sumlin"), Regina Warfel ("Warfel"), and Debbie Williams ("Williams"), bring this proposed class action against three groups of Defendants, the Trilegiant Defendants, which includes Affinion Group, LLC ("Affinion"), Trilegiant Corporation, Inc. ("Trilegiant"), and Apollo Global Management, LLC ("Apollo"), the Credit Card Defendants, which includes Bank of America, N.A. ("Bank of America"), Capital One Financial Corporation ("Capital One"), Chase Bank USA, N.A. ("Chase"), Citibank, N.A. ("Citibank"), Citigroup, Inc. ("Citigroup"), Chase Paymentech Solutions, LLC ("Paymentech"), and Wells Fargo Bank, N.A. ("Wells Fargo"), and the E-Merchant Defendants, which includes 1-800-Flowers.com, Inc. ("1-800 Flowers"), Beckett Media LLC ("Beckett"), Buy.com, Inc. ("Buy.com"),

1

Classmates International, Inc. ("Classmates"), Days Inns WorldWide, Inc. ("Days Inns"), Wyndham WorldWide Corporation ("Wyndham"), FTD Group, Inc. ("FTD"), Hotwire, Inc. ("Hotwire"), IAC/InterActiveCorp ("IAC"), Shoebuy.com, Inc. ("Shoebuy"), PeopleFindersPro, Inc. ("PeopleFinder"), Priceline.com, Inc. "Priceline"), and United Online, Inc. ("United Online").

The Plaintiffs allege several causes of action against the Defendants, including violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) (RICO), against all Defendants; conspiring to violate RICO, 18 U.S.C. § 1962(d), against all Defendants; aiding and abetting RICO, 18 U.S.C. §§ 1961-1968, against the Credit Card Defendants; aiding and abetting commissions of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and bank fraud, 18 U.S.C. § 1344, against the Credit Card Defendants; violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* (ECPA), against Trilegiant, Affinion, and the E-Merchant Defendants; aiding and abetting ECPA violations under 18 U.S.C. §§ 2510, *et seq.*, against the Credit Card Defendants; violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* (CUTPA), against the Trilegiant Defendants and E-Merchant Defendants; aiding and abetting and conspiracy to violate CUTPA, Conn. Gen. Stat. § 42-110a, *et seq.*, against the Credit Card Defendants; violations of the California Business and Professional Code § 17602 (Automatic Renewal Statute), against the Trilegiant Defendants and E-Merchant Defendants; and claims of unjust enrichment against all Defendants.

2

Before the Court are two motions to dismiss.  The first was filed by IAC [Dkt. 190; Memorandum of Law in Support, Dkt. 190-1, hereinafter "IAC MTD"]; the second was filed by Apollo [Dkt. 187; Memorandum of Law in Support, Dkt. 187-1, hereinafter "Apollo MTD"].  Each of the Defendants moves to dismiss the Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint") against them.  [Dkt. 141, hereinafter "CAC at ¶"].  For the reasons stated below, the motions are GRANTED.

## II. Background

A full recitation of the background and facts is set forth in the Court's Memorandum of Decision Granting In Part and Denying In Part Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint or, in the Alternative, to Strike Portions of the Complaint [Dkt. 276, hereinafter "Court Order at Dkt. 276"].

As related to the present motions to dismiss, the Complaint only discusses the movants briefly.  The Plaintiffs allege that "Defendant, IAC, is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 555 West 18th Street, New York, New York.  IAC acquired Shoebuy.com in 2006 as its wholly-owned business subsidiary.  IAC operates its business through Shoebuy.com."  CAC at ¶ 53.  The Plaintiffs also allege that "Defendant, Shoebuy.com, is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 101 Arch Street, 16th Floor, Boston, Massachusetts, and is a wholly-owned subsidiary and an

3

operating business of IAC." CAC at ¶ 58. One of the named Plaintiffs alleges that she made an online purchase through Shoebuy.com that resulted in enrollment in one of Trilegiant's membership programs. CAC at ¶ 26. There are no other allegations in the Complaint that relate to IAC.

Apollo is the "the indirect parent of an investment manager ('Apollo Management') to investment funds that in the aggregate beneficially own 69% of the stock of Affinion Group, LLC ("Affinion"), which in turn owns Trilegiant." Apollo MTD p. 1. The Complaint references Affinion's Form 10-K which claims that Affinion is "controlled by Apollo who will be able to make important decisions about [Affinion's] business and capital structure." CAC at ¶ 38. The 10-K states that "[a]pproximately 69% of the common stock of [Affinion] is beneficially owned by investment funds affiliated with Apollo. As a result, Apollo controls [Affinion] and has the power to elect a majority of the members of [Affinion's] board of directors, appoint new management and approve any action requiring the approval of the holders of Holdings' stock, including approving acquisitions or sales of . . . assets." *Id.* Affinion's Form 10-K does not state or imply that Apollo dominates or controls the day-to-day business of Affinion or Trilegiant.

The Plaintiffs also allege that Apollo played a larger part in the overall scheme because "[a]fter Apollo bought Trilegiant, Apollo management ostensibly tried to 'clean up' the company by reaching the 2006 Attorney General and class action settlements, yet it permitted the datapass fraud to continue unabated." CAC at ¶ 67. Furthermore, the Plaintiffs cite a slide deck presentation from

4

Affinion or Trilegiant to 1-800 Flowers in which it stated that Apollo would "'promote an entrepreneurial spirit to accelerate value creation' within Affinion by enhancing 'revenue growth' and 'improved productivity' and 'optimize service to customers.'" *Id.*  In addition, the deck stated that "Apollo's investment style is to allow management operating flexibility on a day-to-day basis, and add value at a strategic and director level." *Id.*  The Plaintiffs interpreted that slide deck to prove that Trilegiant's "management had operating flexibility to implement datapass and market it, but Apollo would approve it and provide high level strategic direction on how it would be carried out and would indeed have approval over whether datapass would continue." *Id.*

### III.     Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

5

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

6

IV.     Discussion

Defendants IAC and Apollo both move to dismiss the Plaintiffs' Complaint against them arguing that the Plaintiffs have only included them as Defendants because of their roles as parent companies to other named Defendants. IAC MTD p. 1, Apollo MTD p. 1. They also argue that the Plaintiffs have not alleged facts showing that either company dominated its subsidiary in such a way as to subject it to civil liability for the actions of its subsidiary. IAC MTD p. 4-8, Apollo MTD p. 9-10.

"[I]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61 (1998) (citations and internal quotation marks omitted). Given this rule, the Plaintiffs must either allege that IAC or Apollo was directly involved in the conduct that gave rise to the litigation or that an exception to the general rule of non-liability for parent corporations applies.

In response, the Plaintiffs argue that Apollo was directly involved in the scheme because it authorized and supervised the datapass between the Trilegiant and E-Merchant Defendants. [Dkt. 219, Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss, p. 114-117, hereinafter "Opp."]. They also claim that Apollo controlled and dominated its subsidiaries to the point where it was liable, at least, for the Trilegiant Defendants' CUTPA

7

violations.  *Id.*  The Plaintiffs do not directly respond to IAC's argument that it is not liable.

    1.  Exception to the Non-Parent Liability Rule

To pierce the corporate veil, the Plaintiffs must allege that the parent companies completely dominated the subsidiary companies to such an extent that the subsidiaries were nothing more than extensions of the parents.  *See Greene v. Long Island R.R. Co.*, 280 F.3d 224, 235 (2d Cir. 2002) ("[C]orporate ownership of a subsidiary and overlapping offices and directorates are not, without more, sufficient to impose liability on the parent for conduct of the subsidiary [.]"); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 538 (S.D.N.Y. 2008) (holding that ownership and overlapping directors are insufficient, standing alone to pierce the corporate veil); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 342 F. Supp. 2d 207, 216 (S.D.N.Y. 2004) ("Courts have held, however, that factors such as sole ownership, overlapping directors, consolidated financial statements, and reference to the subsidiary as a department are insufficient to establish the type of day-to-day control necessary to disregard corporate separateness."); *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 230-31 (1991) ("It is undisputed that in Connecticut a court will disregard the corporate structure and pierce the corporate veil only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." (citations and internal quotation marks omitted)).  Furthermore, "'[c]onclusory allegations . . . are not sufficient to survive

8

a motion to dismiss: To overcome the presumption of separateness afforded to related corporations, plaintiffs must come forward with the showing of actual domination required to pierce the corporate veil.'" *Kawski v. Johnson & Johnson*, No. 04-Cv-6208(CJS), 2005 WL 3555517, at *10 (W.D.N.Y. Dec. 19, 2005) (quoting *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996)).

The Plaintiffs have not sufficiently provided factual allegations that would allow this Court to abandon the general presumption of non-liability for parent corporations. In *De Jesus v. Sears, Roebuck & Co.*, the court found that the complaint was insufficiently pled to permit a court to pierce the corporate veil when the complaint only contained conclusory allegations that the parent Sears "determine[d] the business objectives and goals of Allstate, and designate[d] those persons who manage[d] and operate[d] Allstate in accordance with [the fraudulent RICO] objectives and goals." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d. Cir. 1996). These allegations were insufficient because the plaintiffs failed to allege any specific facts that supported their conclusions that the fraudulent actions at issue in that case were caused by, known to, or ratified by the parent company. *Id.* at 70.

Here, the Plaintiffs' assertions that IAC "operates its business through Shoebuy.com" is the same type of conclusory allegation that has been found to be insufficient to maintain a cause of action against a parent company. The Plaintiffs do not offer any facts tending to show that IAC dominated Shoebuy in any way, and, in fact, do not attempt to even explain the relationship between the


two companies, except for the general claim that IAC is the parent. Accordingly, IAC's motion to dismiss is GRANTED.

As to Apollo, the Plaintiffs make similar conclusory allegations that the court found inadequate in *De Jesus*. First, the Plaintiffs cite Affinion's 10-K which only showed that Apollo had some control over its subsidiaries' corporate structure; and second, the Plaintiffs discuss a slide deck presentation in which Trilegiant or Affinion stated that Apollo would "promote an entrepreneurial spirit to accelerate value creation," implying that Apollo had a continued relationship with its subsidiaries. CAC at ¶ 67. These allegations only support a finding that Apollo supervised the companies from a strategic level, not that it exercised the day-to-day control necessary for this Court to disregard the corporate form.

Moreover, the slide deck explicitly contradicts the Plaintiffs' conclusions. The presentation stated that "Apollo's investment style is to allow management operating flexibility on a day-to-day basis, and add value at a strategic and director level." CAC at ¶ 67. Instead of proving complete control over any aspect of Trilegiant's marketing process, the slide deck actually proves that Apollo was not engaged at the day-to-day operational level. *See Parejas v. Gen. Elec. Cap. Servs., Inc.*, No. 10-CV-3348 DLI, 2011 WL 2635778, at *2 (E.D.N.Y. July 5, 2011) (day-to-day control is necessary to pierce the corporate veil).

Accordingly, the Plaintiffs have failed to sufficiently allege that either IAC or Apollo should be liable for the actions of their subsidiaries.

**2. Apollo's Independent Liability**

The Plaintiffs have also alleged that even aside from its parent-subsidiary relationship to the other Trilegiant Defendants, Apollo is independently liable for violations of CUTPA, and arguably the Plaintiffs' other causes of action. Opp. p. 114-117. The Plaintiffs argued that Apollo "maintained approval authority over Affinion and Trilegiant's actions, provided 'high level strategic direction on how [the data pass] would be carried out and . . . [had] approval over whether data pass would continue.'" Opp. p. 115. There are no other facts or allegations made in the Complaint that link Apollo's conduct to the overall scheme giving rise to the Plaintiffs' causes of action. It appears from the pleadings that the Plaintiffs only assume Apollo had supervisory control over the datapass because Apollo knew about the scheme when it purchased Trilegiant. CAC at ¶ 67. The Plaintiffs, however, offer no facts showing why or how Apollo maintained approval authority over the datapass.[1] The mere conclusion that it maintained authority to approve the marketing process because it offered high-level strategic direction is not sufficient under Rule 8(a) to sustain a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

---

[1] Even if this were sufficient at the motion to dismiss stage, this Court has already held that the datapass scheme in and of itself was not a violation of CUTPA. *See* Court Order at Dkt. 276. Therefore, since the Plaintiffs have not alleged that Apollo was involved at any level in the refund mitigation strategy, Apollo's motion to dismiss would still be granted.

**For the foregoing reasons, Defendants' [Dkt. 190] and [Dkt. 187] Motions to Dismiss the Consolidated Amended Class Action Complaint are GRANTED.  As no claims against either Defendant remain, IAC and Apollo are terminated as Defendants.**

              **IT IS SO ORDERED.**

              _____/s/_____
              **Hon. Vanessa L. Bryant**
              **United States District Judge**

**Dated at Hartford, Connecticut:  March 28, 2014.**